UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ELIO AMIR OROZCO-VALENZUELA, | ) | CASE NO.  1:14-CV-1669 |
| | ) | |
| Petitioner, | ) | JUDGE ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| ERIC H. HOLDER, JR., *et al.*, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondents. | ) | |

This habeas petition is before the magistrate judge on referral for general pretrial supervision.  Currently pending before the Court is the petition for habeas relief, pursuant to 28 U.S.C. §2241, filed by Elio Amir Orozco-Valenzuela ("Petitioner" or "Orozco-Valenzuela").  For the reasons given below, the § 2241 petition should be DISMISSED.

## I.  Introduction

This case arises out of Petitioner's challenge to the interpretation of various sections of the Immigration and Nationality Act ("INA").  The INA regulates the admission and removal of "aliens," individuals who are not citizens or nationals of the United States.  When immigration officials seek to remove an alien from the United States, that alien is charged with removability and placed in "removal proceedings." The INA authorizes immigration officials to detain an alien who is in removal proceedings.  Generally, the INA permits immigration officials to grant an alien in removal proceedings release on bond during the pendency of those proceedings.  In this case, however, Petitioner was placed in removal proceedings and denied bond. Immigration officials relied on Petitioner's status as a "criminal alien" – an alien who has

been convicted of any one of several enumerated criminal offenses – to determine that he was not eligible for release on bond.  Petitioner contends that immigration officials relied on a flawed interpretation of the relevant statute to determine that he was subject to mandatory detention during his removal proceedings.

## II.  Relevant Immigration Proceedings

The following facts are not in dispute:

Petitioner is a native and citizen of Guatemala.  (Notice to Appear, Doc. No. 1-3.) In October 1998, Petitioner entered the United States near Brownsville, Texas without being admitted or paroled.  (*Id.*)  In August 2007, Petitioner was arrested on one count of making a false statement in an application for a United States passport, arising out of an August 2007 passport application in which Petitioner represented that he was a citizen of the United States.  (*Id.*; USDC Dkt. No. 1:07-CR-482, doc. nos. 1, 3.)  In September 2007, the Government issued an indictment charging Petitioner with the single count; thereafter, Petitioner was released on an unsecured $10,000 bond. (USDC dkt. No. 1:07-CR-482, doc. nos. 3, 5.)  In October 2007, Petitioner pleaded guilty to the single count in the indictment.  (*Id.*, entry at 10/05/2007.)  In January 2008, the Court sentenced Petitioner to a three-year term of probation.  (Declaration of Elio Orozco-Valenzuela ("Petitioner Decl.") at ¶ 18, Doc. No. 15 at Ex. A.)

More than five years later, on April 3, 2013, the Department of Homeland Security ("DHS") served Petitioner with a notice to appear, charging him, *inter alias*, with removability under § 212(a)(2)(A)(i)(I) of the INA, as an alien who was convicted of a crime involving moral turpitude.  (Doc. No. 1-3.)  On that same date, Petitioner was taken into custody by Immigration and Customs Enforcement ("ICE") and detained

without bond.  (*Id.*)

Petitioner requested a redetermination of his custody status; and, after a hearing on April 18, 2013, an immigration judge ("IJ") determined that Petitioner represented a flight risk, and declined to release Petitioner on bond.  (Bond Memorandum, Doc. No. 1-4.)  Petitioner filed a notice of appeal with the Board of Immigration Appeals ("BIA").  (Doc. No. 15 at 4.)  On August 1, 2013, the BIA issued a decision vacating the IJ's April 2013 determination and releasing Petitioner on a $7,000 bond.  (August 2013 BIA Decision, Doc. No. 1-5.)

On October 30, 2013, the BIA *sua sponte* reconsidered and vacated its August 2013 decision.  (October 2013 BIA Decision, Doc. No. 1-7.)  The BIA concluded that, because immigration officials alleged that Petitioner was inadmissible under § 212(a) of the INA, the IJ may have lacked jurisdiction to consider Petitioner's request for bond.  (*Id.*)  The BIA remanded the case to the IJ to conduct a hearing – commonly referred to as a *Joseph* hearing – to determine whether the IJ had jurisdiction to consider the issue of bond in Petitioner's case.[1]  (*Id.*)

On November 25, 2013, an IJ conducted a hearing on the issue of whether the IJ had jurisdiction to consider Petitioner's request for bond.  (Doc. No. 1-8.)  The IJ determined that Petitioner's offense of conviction constituted a crime of moral turpitude and, thus, Petitioner was subject to mandatory detention pursuant to INA § 236(c)(1)(A).

---

[1] In *In re Joseph*, 22 I. & N. Dec. 799 (BIA 1999), the BIA held that, where immigration officials allege that an alien is removable under INA § 212(a) and that alien requests bond, the IJ should conduct a hearing to determine whether the IJ has jurisdiction to consider the request.  *See Matter of Davey*, 26 I. & N. Dec. 37, 41 (BIA 2012) ("The relevant question in a *Joseph* hearing is whether the DHS is substantially unlikely to prove a charge that would justify mandatory detention.").

(*Id.*)  On July 23, 2014, ICE apprehended Petitioner.  (Declaration of Ryan Serevitch ("Serevitch Decl.") at ¶ 7, Doc. No. 14-1.)  Petitioner, who appealed the IJ's November 2013 order to the BIA, has remained in ICE custody at county and city jails since that date.  (Petitioner Decl. at ¶ 41, Doc. No. 15 at Ex. A.)  On September 23, 2014, the BIA dismissed Petitioner's appeal from the IJ's November 2013 order, finding that: (1) the IJ properly concluded that Petitioner was subject to mandatory detention; and (2) under the BIA's decisions in *Matter of Rojas*, 23 I&N Dec. 117 (BIA 2001) and *Matter of Garcia-Arreola*, 25 I&N Dec. 267 (BIA 2010), Petitioner was subject to mandatory detention despite the fact that he was not immediately taken into ICE custody after his 2008 conviction.[2]  (Doc. No. 16-1.)

### III.  Proceedings in this Court

In July 2014, Orozco-Valenzuela, through counsel, filed his § 2241 petition in this Court.  (Doc. No. 1.)  He contends that, because ICE failed to apprehend him immediately after his January 2008 conviction for making a false statement in an application for a passport, he is not subject to mandatory detention and, thus, is entitled to a bond hearing.  Respondent contends that the mandatory detention provision of INA

---

[2] On October 23, 2014, an IJ: determined that Petitioner was removable from the United States; denied his applications for various forms of relief, including asylum and withholding of removal; and ordered Petitioner removed to Guatemala.  (Doc. No. 21-1.)  In a notice to this Court, Petitioner asserts that he will appeal the IJ's October 2014 decision to the BIA.  (Doc. No. 21.)  The relevant regulation provides that Petitioner may not be removed during the time allotted for the filing of an appeal to the BIA, and during the time that any such appeal is pending.  8 C.F.R. § 1003.6(a).  Accordingly, despite the IJ's determination that Petitioner is removable as alleged in the Notice to Appear, he will not be removed to Guatemala until – and if – the BIA affirms the IJ's October 2014 decision.

§ 236(c), which is codified at 8 U.S.C. § 1226(c),[3] applies without regard to when ICE takes a criminal alien into custody.

## IV.  Jurisdiction

Neither party addresses this Court's jurisdiction to consider Petitioner's request for habeas relief.  Regardless, it is incumbent upon a federal court to assure itself of the basis of its jurisdiction in a particular matter, "even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  As with many aspects of immigration proceedings, Congress has circumscribed the jurisdiction of federal courts to review decisions regarding the pre-removal detention and release of aliens.  Section 1226(e) of Title 8 limits the jurisdiction of federal courts to review immigration officials' decisions in this context:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review.  No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation or denial of bond or parole.

8 U.SC. § 1226(e).

Although the Sixth Circuit has not addressed the specific question of whether § 1226(e) deprives it of jurisdiction to consider the issues raised in this case, other federal courts have concluded that § 1226 does not preclude judicial review, via § 2241, of constitutional claims or questions of law.  *See, e.g., Demore v. Kim*, 538 U.S. 510,

---

[3] The documents arising out of Petitioner's immigration proceedings refer to the relevant code provisions using their location within the INA, *e.g.,* INA § 236.  For purposes of  clarity and ease of reference, whenever feasible, this Report and Recommendation refers to the relevant code provisions using their location within the United States Code, *e.g.,* 8 U.S.C. § 1226.

516-17 (2003) (holding that § 1226(e) does not bar judicial review of constitutional claims to the statutory framework that permits the petitioner's detention without bail); *Sylvain v. Attorney General*, 714 F.3d 150, 155 (3d Cir. 2013); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("Although [§ 1226(e)] restricts jurisdiction in federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions of law.").  Further, the reasoning employed by at least one of these courts compels the conclusion that § 1226(e) does not foreclose judicial review of Petitioner's claims:

> Nothing in [§ 1226(e)] prevents us from deciding whether the immigration officials had statutory authority to impose mandatory detention.  For one thing, whether the officials had authority is not a "discretionary judgment."  And if the officials lacked authority, they could not act "under [§ 1226(e)]."

*Sylvain*, 714 F3d at 155 (internal citations omitted).  Here, Petitioner does not challenge a discretionary decision of the Attorney General.  Rather, Petitioner challenges the Attorney General's interpretation of § 1226(c) as requiring the Attorney General to detain Petitioner without bond.  Given that immigration officials concluded that they were statutorily required to detain Petitioner without bond, there was no discretionary decision regarding bond.  Accordingly, § 1226(e) does not deprive this Court of jurisdiction to consider Petitioner's claim in this case.

### V.  Proper Respondent

In his § 2241 petition, Orozco-Valenzuela named multiple respondents, including United States Attorney General Eric Holder, Jr.; DHS Secretary Jeh Johnson; ICE Field Office Director Rebecca Adducci; and the two jails in which he has been detained since

being taken into ICE custody.  (Doc. No. 1.)  Although Petitioner obtained service on all respondents, including by serving the relevant custodian for each of the jail facilities (doc. nos. 5-9), to date, only the federal government respondents ("Respondents") have filed an Answer to the petition.  (Doc. No. 14.)

It is well settled that a petition for habeas relief "shall be directed to the person having custody of the detained," who is the petitioner's "immediate custodian." 28 U.S.C. § 2243; *Roman v. Ashcroft*, 340 F.3d 314, 319-20 (6th Cir. 2003).  In *Roman*, the Sixth Circuit determined that, in the case of an alien in the custody of United States immigration officials, the petitioner's immediate custodian is the "I[CE] District Director for the district where a detention facility is located." 340 F.3d at 320.  In the petition, Orozco-Valenzuela alleges that Ms. Adducci is the "Field Office Director of the Detroit Field Office of ICE, whose area of responsibility is Michigan and Ohio," and that he is in ICE custody at detention facilities in Ohio. (Doc. No. 1 at 4.)  Respondents do not dispute this.[4]  Accordingly, Ms. Adducci is a proper respondent in this case, and this petition may proceed despite the failure of the representatives of the county and city jails to respond to the petition.[5]

---

[4] The web site for ICE confirms that the Detroit Field Office has responsibility for Ohio and Michigan.  *See* Enforcement and Removal Operations Field Offices, available at http://www.ice.gov/contact/ero (last visited March 12, 2015).

[5] In their Answer, Respondents "recognize[]" the holding of *Roman*, but argue that they "believe[] that the proper respondent is the warden of the facility in which an alien is detained."  (Doc. No. 2, n.2.)  Respondents cite to *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004), in which the Supreme Court determined that, in that case, the proper respondent for the detained alien's habeas petition was the commander of the military brig in which the petitioner was being detained.  Courts in this Circuit have recognized the holding of *Padilla*, but have declined to find that the Supreme Court's decision in that case undermines the holding of *Roman*.  *See, e.g., Uljic v. Baker*, No. 06-13106, 2006 WL 2811351 (E.D. Mich.

**VI. The Merits of Petitioner's Claim**

The question in this case arises out of the immigration officials' interpretation of 8 U.S.C. § 1226.  Subsection (a) of § 1226 authorizes the Attorney General to arrest and detain aliens.  8 U.S.C. § 1226(a).  That subsection also provides that, with exceptions set forth in subsection (c), the Attorney General may, *inter alias*, release a detained alien on bond or conditional parole.  8 U.S.C. § 1226(a)(1)-(2).  It is the text and meaning of subsection (c) that is at issue in this case.  In relevant part, subsection (c) provides:

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who -

 (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or is deportable under section 1227(a)(4)(B),

---

Sept. 28, 2006) ("Respondent, as Field Office Director for a district headquartered in Detroit whose responsibility includes Michigan and Ohio, is, consistent with *Padilla* and *Roman*, properly subject to this petition for habeas corpus.").  Further, because Respondents answered Orozco-Valnezuela's petition and offer no substantive argument in support of their contention regarding the identity of the proper respondent in this case, this issue is waived.  *See Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–996 (6th Cir.1997)).

> *when the alien is released*, without regard to whether the
> alien is released on parole, supervised release, or probation,
> and without regard to whether the alien may be arrested or
> imprisoned again for the same offense.
>
> (2) Release
>
> The Attorney General may release an alien described in
> paragraph (1) only [in certain enumerated circumstances,
> generally related to the protection of cooperating witnesses].

8 U.S.C. § 1226(c) (emphasis added).  Thus, as a whole, § 1226(c) requires detention –

without bond – of criminal aliens.   It is the timing of the mandatory detention provision

of subsection (c) that is at issue in this case.[6]  Specifically, Petitioner argues that

detention without bond is mandatory only when immigration officials immediately take a

criminal alien into custody, and not when there is a delay between the alien's release

and his apprehension by immigration officials.  According to Petitioner, because

immigration officials failed to place him in custody *immediately* after his 2008 criminal

conviction, he is not subject to mandatory detention under § 1226(c) and, thus, is

entitled to a hearing on the issue of bond.

**A.     Whether § 1226(c) Requires Mandatory Detention Only When Immigration
        Officials Take a Criminal Alien into Custody Immediately Upon Release
        From Criminal Custody**

Petitioner's argument arises out of the meaning of the word "when" as it is used

in § 1226(c)(1).  Petitioner contends that the phrase "when the alien is released"

imposes an immediacy requirement on immigration officials.  That is, Petitioner

contends that, if immigration officials fail to take a criminal alien into custody

_____

[6] At least for the purposes of this habeas petition, Petitioner does not dispute that
he was inadmissible under one of the provisions set forth in subsection (c)(1), and, thus
that the requirements of subsection (c) apply to him.

-9-

immediately upon his release from criminal custody, detention is not mandatory. Respondents rely upon the BIA's decision in *Matter of Rojas* to support their opposition to Petitioner's immediacy argument.

In *Matter of Rojas*, the petitioner, a criminal alien, made a similar "immediacy" argument under § 1226(c). The BIA rejected that argument, concluding, "[a] criminal alien who is released from criminal custody . . . is subject to mandatory detention under [§ 1226(c)] even if the alien is not immediately taken into custody by [immigration officials] when released from incarceration." 23 I&N Dec. at 117. As discussed in relevant detail below, the BIA concluded that the interpretation suggested by the petitioner was inconsistent with the language of the statute, the overall statutory context, and practical considerations of the statute's enforcement. *Id.* at 118-24.

Respondents further contend that the BIA's interpretation of the statute in *Matter of Rojas* is subject to deference under *Chevron, USA, Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984). Petitioner opposes this deference argument and asserts that this Court should find that immediate apprehension by immigration officials is a prerequisite to a criminal alien's mandatory detention under § 1226(c). The Sixth Circuit has not yet determined whether *Rojas* is entitled to deference, or whether § 1226(c) contains an immediacy requirement.

### 1. Whether the BIA's Interpretation of § 1226(c) in *Matter of Rojas* is Entitled to Deference

Under *Chevron*, a federal court must defer to an agency's reasonable interpretation of an ambiguous statute. 467 U.S. at 842-44. In the context of immigration statutes, the Supreme Court has explained that "the BIA should be afforded

*Chevron* deference as it gives ambiguous statutory terms 'concrete meaning through a process of case-by-case adjudication.'" *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (quoting *INS v. Cardez-Fonseca*, 480 U.S. 421, 448-49 (1987)).  The *Chevron* analysis is two-fold.  The reviewing court must first consider "whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." 467 U.S. at 842-43.  If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.  A court must give "controlling weight" to an agency's interpretation of a statute that the agency is charged with administering unless the interpretation is "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844.

### a.  Whether § 1226(c) is Ambiguous

Respondents contend that § 1226(c)(1) is ambiguous.  Specifically, Respondents argue that the phrase "when the alien is released" creates ambiguity because it is not clear whether the term: (1) requires immigration officials to immediately apprehend and detain a criminal alien upon release from criminal custody; or (2) merely specifies the earliest point at which immigration officials' duty to apprehend a criminal alien arises.  Respondents also argue that the language in subsection (c)(2), permitting the Attorney General to "release an alien described in paragraph (1) only" in certain circumstances, creates further ambiguity.  Specifically, Respondents contend that this phrase is ambiguous because it is not clear whether "an alien described in paragraph (1)" refers to: (1) aliens in the four classes enumerated in paragraph (1); or (2) aliens in those

enumerated classes who were taken into immigration custody immediately following their release from criminal custody.

Petitioner argues that the statute is not ambiguous.  He contends that Congress's use of "when," rather than "whenever," or "in the event that," or "regardless of when the alien is released," or "at any time after the alien is released" indicates a Congressional intent that detention is mandatory only where immigration officials have apprehended a criminal alien immediately upon his release from criminal custody.

Petitioner's argument is unavailing.[7]  The meaning of "when" in the phrase "when the alien is released" is subject to multiple interpretations:

> To be sure, "when" . . . can be read, on one hand, to refer to action or activity occurring at that time, or as soon as other action has ceased or begun.  On the other hand, "when" can also be read to mean the temporally broader 'at or during the time that,' 'while,' or 'at any or every time that.'

*Hosh v.Lucero*, 680 F.3d 375, 379-80 (4th Cir. 2012) (internal quotation marks and citations omitted).  Dictionaries reflect that "when" can mean either "at any time after" or "immediately upon."  *See, e.g.,* The Random House College Dictionary 1498 (Revised Ed. 1980) (defining when as "4. at the time or in the event that" and "5. upon or after which; and then."); The American Heritage Dictionary of the English Language 2032 (3d Ed. 1992) ("1. At the time that . . . 2. As soon as . . . 3. Whenever.").  Other courts have recognized that, in the immigration context, "when" can mean either "immediately" or

---

[7] A similar argument could be made to oppose Petitioner's position.  For example, Congress's decision to use "when the alien is released" rather than "at the time that the alien is released," or "only upon the alien's release," or "immediately upon the alien's release," could evince an intent to avoid the very immediacy requirement that the Petitioner supports.

"while," and that, as a result, § 1226(c) is ambiguous.  *See, e.g., Mora-Mendoza v. Godfrey*, No. 3:13-CV-1747, 2014 WL 326047, *3 (D. Or. Jan 29, 2014); *Santana v. Muller*, No. 12-CV-430, 2012 WL 951768, *4 (S.D.N.Y. March 21, 2012); *Guillaume v. Muller*, No. 11-CV-8819, 2012 WL 383939, * 4 (S.D.N.Y. Feb. 7, 2012); *Khetani v. Petty*, 859 F. Supp. 2d 1036, 1038 (W.D. Mo. 2012); *Serrano v. Estrada*, No. 01-CV-1916, 2002 WL 485699, *3 (N.D. Tex. March 6, 2002); *Saucedo-Tellez v. Perryman*, 55 F. Supp. 2d 882, 885 (N.D. Ill. 1999).  Accordingly, the statute could be reasonably read either to require immediate apprehension, or to permit apprehension at any point after a criminal alien is released.  Because the statute permits multiple meanings, it is ambiguous, and this Court must consider whether the BIA's interpretation is entitled to deference.[8]  *See Nat'l R.R. Passenger Corp. v. Boston and Maine Corp.*, 503 U.S. 407, 418 (1992) ("The existence of alternative dictionary definitions of [the relevant word], each making some sense under the statute, itself indicates that the statute is open to interpretation.").

> **b.    Whether the BIA's Interpretation of § 1226(c) is Permissible and Reasonable**
>
> **i.    The Text**

_____

[8] Petitioner notes that numerous district courts have determined that § 1226(c) is not ambiguous, and requires mandatory detention only where a criminal alien is immediately apprehended by immigration officials. (Doc. No. 15 at 7, n.2.)  As discussed above, at least one appellate court, as well as multiple district courts, have determined that § 1226(c) is ambiguous because the term "when the alien is released" could refer to multiple moments in time.  This disagreement amongst numerous courts reflects the statute's ambiguity.  *See Diaz v. Miller*, No. 11-CV-40529, 2011 WL 3422856, *3 (D.N.J. Aug. 4, 2011) ("The fact that courts have disagreed so in interpreting the statutory language [of § 1226(c)] supports the conclusion that is ambiguous."); *Beck v. City of Cleveland*, 390 F.3d 912, 920 (6th Cir. 2004) ("[T]he judicial decisions that differ on the proper interpretation of [a regulation implementing the Fair Labor Standards Act] also reflect this ambiguity.").

Respondents argue that the BIA's interpretation of § 1226(c) is a "more natural way to read" the relevant parts of the statute.  This Court agrees.  The structure of § 1226(c) supports Respondents' argument.  The first paragraph lists classes of criminal aliens who must be detained when they are released.  8 U.S.C. § 1226(c)(1) ("The Attorney General shall take into custody any alien who [falls into one of the four categories enumerated in subsections (c)(1)(A)-(D)] when the alien is released."  The second paragraph imposes mandatory detention for "an alien described in paragraph (1)" unless certain circumstances apply.  In other words, the first paragraph describes the types of criminal aliens who must be taken into immigration custody.  The second paragraph creates the requirement that those classes of aliens be held without bond.

Petitioner contends that the phrase "an alien described in paragraph (1)" refers to aliens who fall into one of the four enumerated classes *and* who were detained immediately upon release from criminal custody.  This interpretation, however, strains the structure of the statute and attempts to further define the aliens who are subject to mandatory detention. It also adds the word "and" to the statute.  This Court concludes that the phrase "when the alien is released" is part of the statute's direction to immigration officials to take certain classes of criminal aliens into custody.  Interpreting the phrase "when the alien is released" to be part of the definition of aliens subject to mandatory detention, as suggested by Petitioner, ignores the structure of the statute and the language of the phrase at issue.

Petitioner also argues that, if § 1226(c) is interpreted to permit mandatory detention regardless of when immigration officials apprehend a criminal alien, the phrase "when the alien is released" is "removable surplusage."  This distinction is not

-14-

correct.  Under the BIA's interpretation of the statute, the phrase serves the purpose of

defining the earliest point at which immigration officials may take a criminal alien into

custody, *i.e.*, when he is released from criminal custody.  Further, absent the phrase

"when the alien is released," the statute would allow immigration officials to take an

alien into immigration custody even before he completed his term of imprisonment or

other control by the entity that charged him with a criminal offense. The BIA's

interpretation of § 1226(c) is a permissible and reasonable interpretation of the text of

the statute.

### ii.    Legislative History and Congressional Intent

Respondents further argue that the BIA's interpretation of § 1226(c) is

permissible and reasonable in the context of the INA as a whole, and particularly in

reference to relevant changes to the INA implemented by the Illegal Immigration Reform

and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (Sept.

30, 1996).  Congress enacted the IIRIRA "against a backdrop of wholesale failure by the

INS to deal with increasing rates of criminal activity by aliens." *Demore*, 538 U.S. at 518

(citing Criminal Aliens in the United States: Hearing before Permanent Subcommittee

on Investigations of the Senate Committee on Governmental Affairs, 103d Cong., 1st

Sess. (1993)).

As discussed by the Supreme Court in *Demore*, at the time of the enactment of

the IIRIRA, the INS suffered from "a near-total inability to remove deportable criminal

aliens," due in part to "the agency's failure to detain those aliens during their deportation

proceedings." *Id*. (citing Department of Justice, Office of the Inspector General,

Immigration and Naturalization Service, Deportation of Aliens After Final Orders Have

Been Issued, Rep. No. I-96-03 (Mar. 1996)).  Further, "deportable criminal aliens who remained in the United States often committed more crimes before being removed. One 1986 study showed that, after criminal aliens were identified as deportable, 77% were arrested at least once more and 45% –nearly half – were arrested multiple times before their deportation proceedings even began." *Id*. (citing Hearing on H.R. 3333 before the Subcommittee on Immigration, Refugees, and International Law of the House on Committee on the Judiciary, 101st Cong., 1st Sess., 54, 52 (1989)).

At the time of the IIRIRA, "some studies presented to Congress suggested that detention of criminal aliens during their removal proceedings might be the best way to ensure their successful removal from this country.  It was following these Reports that Congress enacted [§ 1226(c)], requiring the Attorney General to detain a subset of deportable criminal aliens pending a determination of their removability." *Id.* at 521 (internal citations omitted).  Prior to the IIRIRA, § 1226 granted the Attorney General broad discretion with respect to granting bond to criminal aliens. *See* 8 U.S.C. § 1226 (1991); *Demore,* 538 U.S. at 520.  In 1996, the IIRIRA amended § 1226 to include the mandatory custody provision at issue here.  *See* IIRIRA, Pub. L. No. 104-208, Div. C., § 303(a), 110 Stat. 3009 (Sept. 30, 1996).

In *Matter of Rojas*, the BIA recognized that "a number of the amendments made by the IIRIRA were aimed at expediting the removal of aliens, and that is especially true for criminal aliens such as those who fall within subparagraphs (A) through (D) of [§ 1226].  For example, Congress made various forms of relief unavailable to criminal aliens and significantly restricted judicial review for criminal aliens." 23 I&N Dec. at 121. The BIA determined that Congress's intent in amending § 1226 was to effectuate the

-16-

more efficient removal of criminal aliens:

> There is no connection in the [INA] between the timing of an
> alien's release from criminal incarceration, the assumption of
> custody over the alien by the Service, and the applicability of
> any of the criminal charges of removability.  Furthermore, the
> [INA] does not tie an alien's eligibility for any form of relief
> from removal to the timing of the alien's release from
> incarceration and the assumption of custody by the Service.
> In other words, the "when released" issue is irrelevant for all
> other immigration purposes.  The changes made by the
> IIRIRA to expedite removal are not limited to aliens coming
> into Service custody immediately upon release from criminal
> incarceration.  Instead, the amendments made by the IIRIRA
> cover criminal aliens regardless of when they were released
> from criminal confinement and regardless of whether they
> had been living within the community for years upon their
> release.
>
> We understand, in this regard, that Congress was frustrated
> with the ability of aliens, and particularly criminal aliens, to
> avoid deportation if they were not actually in Service custody
> when their proceedings were completed.  The statute does
> direct the Attorney General to take custody of aliens
> immediately upon their release from criminal confinement.
> But Congress was not simply concerned with detaining and
> removing aliens coming directly out of criminal custody; it
> was concerned with detaining and removing *all* criminal
> aliens.

23 I&N Dec. at 122 (internal citations omitted).

Given the context of the passage of the IIRIRA, the BIA's interpretation of

§ 1226(c) is reasonable and permissible.  See *Chevron*, 467 U.S. at 862-63 (discussing

the legislative history of the relevant statute and noting, with approval, that the agency's

interpretation was "consistent with . . . the concerns" identified therein).  Interpreting the

statute to require immediate apprehension as a prerequisite to mandatory custody

undermines the clear purpose of the amendments to § 1226.  See *Hosh*, 680 F.3d at

380, n.6 ("We cannot deem it clear that Congress would, on one hand, be so concerned

-17-

with criminal aliens committing further crimes, or failing to appear for their removal proceedings, or both, that Congress would draft and pass the mandatory detention provision, but on the other hand, decide that, if for whatever reason, federal authorities did not detain the alien immediately upon release, then mandatory detention no longer applies."); *see also* Matter of Garvin-Noble, 21 I&N Dec. 672, 681 (BIA 1997) ("[I]t would be inconsistent with our understanding of congressional intent to construe the transition rules in a way that permits the release of a subgroup of criminal aliens (based on the wholly fortuitous date of release from incarceration) under a more lenient standard . . . .").

Petitioner only briefly addresses the legislative history of the IIRIRA, arguing that the legislative history "demonstrates an intent for detention immediately upon an alien's release."  (Doc. No. 15 at 11.)  To support his argument, Petitioner cites to decisions from other district courts concluding that § 1226(c) requires immediate apprehension in order to impose mandatory detention.[9]  Some of these cases point to the legislative

---

[9] In his petition, Orozco-Valenzuela points to *Shurney v. INS*, 201 F. Supp. 2d 783 (N.D. Ohio 2001), a decision by then-District Judge O'Malley, and contends that it stands for the proposition that the text of § 1226(c) requires mandatory detention only where immigration officials have immediately apprehended a criminal alien upon his release from custody.  In that case, however, the petitioner did not raise an argument regarding the interpretation of § 1226(c).  Rather, he argued that the statute was unconstitutional on its face and as applied in his case.  Relying on reasoning that was closely tied to the facts of that particular case, Judge O'Malley concluded that the statute violated the Fifth Amendment's guarantee of due process as applied to the petitioner.  201 F. Supp. 2d at 793.  She did not address the question of whether the BIA's interpretation of § 1226(c) was permissible, because that question was not at issue in that case.  Further, in *Demore* (decided in 2003, after Judge O'Malley's decision), the Supreme Court concluded that mandatory detention without a hearing under § 1226(c) was "a constitutionally permissible part" of the removal process.  538 U.S. at 531.  Accordingly, the decision in *Shurney* does not support Petitioner's argument in this case.

-18-

history discussed above, and conclude that Congress intended mandatory detention only when immigration officials apprehend a criminal alien immediately upon his release from custody.  As discussed above, however, this reasoning undermines the intent of Congress in enacting a mandatory detention statute.  Neither Petitioner nor any district court decision upon which he relies identifies any way in which an immediacy requirement furthers the clearly expressed Congressional goal of increasing the rate at which criminal aliens are removed from the United States after the completion of their immigration proceedings.

### iii.  Practical Application

Finally, Respondents argue that Petitioner's interpretation of § 1226(c) would "raise serious logistical and practical difficulties."  (Doc. No. 14 at 16.)  Specifically, Respondents contend that requiring immigration officials to take criminal aliens into custody at the precise moment of their release from criminal custody is "unrealistic," as immigration officials "may not know when a qualifying alien will be released from criminal custody," and may not "have the resources to appear at every place a qualifying alien is being released at the moment of release."  (*Id.*)  These are legitimate concerns, ones that the BIA acknowledged in *Matter of Rojas*:

> There are however, additional analytical problems arising from [Rojas's] interpretation of the "when released" clause. For example, it is not clear where the line would be drawn under his reading of the statute.  Would mandatory detention apply only if an alien were literally taken into custody "immediately" upon release, or would there be a greater window of perhaps 1minute, 1 hour, or 1 day?

23 I&N Dec. at 124; *see also Hosh*, 680 F.3d at 380, n.6 (rejecting counsel's argument that "Congress, by using the phrase, 'when released' intended to exempt a criminal

-19-

alien from mandatory custody if the alien was released from state custody and then got as far as the adjacent parking lot before being detained by federal authorities"). Interpreting § 1226(c) to designate the beginning of the period of time during which immigration officials may take a criminal alien into immigration custody – *i.e.*, once he is released from criminal custody – is consistent with the intent of Congress and avoids the practical and logistical issues identified by Respondents.

Petitioner does not directly respond to this argument.  He does, however, argue that individualized bond hearings are sufficient to address Congress's concern regarding immigration officials' failure to timely remove criminal aliens from the United States.  In addition to failing to address the practical and logistical issues raised by Respondents, this argument ignores the evidence regarding the legislative history of § 1226(c).  Congress specifically amended the prior version of § 1226(c) to deprive the Attorney General of the discretion to release criminal aliens during the pendency their removal proceedings.  It makes little sense to adopt an interpretation of § 1226(c) that returns to the Attorney General the very discretion that Congress abolished.

The BIA's decision in *Matter of Rojas* is a reasonable and permissible interpretation of the text, the context and the practical considerations of § 1226(c). Accordingly, that interpretation is entitled to deference from this Court.  Section 1226(c) of the INA does not require immigration officials to apprehend a criminal alien immediately upon his release from criminal custody as a prerequisite to mandatory detention during that alien's removal proceedings.[10]

---

[10] Petitioner also argues that his current detention violates § 1226(c) because he was not immediately detained in November 2013 when the IJ determined that he was

**B.    Whether the BIA Erred in Determining that Petitioner Was In Custody Prior to His Apprehension by Immigration Officials**

In addition to arguing that § 1226(c) contains an immediacy requirement, Petitioner contends that the BIA erred in applying § 1226(c) to detain him without bond because he was sentenced to probation as a result of his criminal conviction and, thus, was not ever "in custody" for the purposes of that statute.[11]    The crux of this issue is whether Petitioner was ever in criminal custody for the purposes of the statute.  There is no dispute that Petitioner was arrested in August 2007, released on bond, and then sentenced to probation.  Petitioner argues that because he was not sentenced to a term of incarceration, he was never in criminal custody and, thus, was not subject to the mandatory detention provision of § 1226(c).  The Government responds that the BIA correctly applied its own precedent to find that Petitioner was subject to mandatory detention.[12]

---

subject to mandatory detention.  This argument lacks merit.  As a preliminary matter, the record reflects that Petitioner breached the conditions of his bond by failing to surrender (Serevitch Decl. at ¶¶ 5-6), and thus, delayed his own apprehension.  Further, § 1226(c) does not contain any reference to release from immigration custody, or any requirement that immigration officials detain an alien immediately after a denial of bond.

[11] Petitioner first raised this issue in a supplemental traverse, which he filed after this Court granted him leave to do so, on the basis that this argument arose out of the BIA's September 2014 decision (affirming the IJ's decision that the IJ lacked jurisdiction to consider the issue of bond in Petitioner's case), which was issued after Petitioner filed his § 2241 petition. (Doc. Nos. 16, 19, 20.)  Respondents filed an opposition, which addressed this argument.  (Doc. Nos. 18, 22.)  Petitioner should have raised this issue in his petition and offers no valid argument for failing to do so.  The Court could consider this issue waived but will address it as the Court permitted Respondents to file an opposition. Nevertheless, such piecemeal briefing should be avoided.

[12] Respondents also argue that the BIA's interpretation of the term "released from custody" is entitled to deference.  This argument, however, is unnecessary.  Petitioner does not suggest that the BIA improperly interpreted § 1226(c) with respect to whether or not he

Petitioner's argument is unavailing.  In *Matter of Kotliar*, 24 I&N Dec. 124, 125 (2007), the respondent, a criminal alien who had been sentenced to probation rather than incarceration by a state court, argued that the mandatory detention provision of § 1226(c) did not apply in his case because "he did not serve a jail term and was apprehended from his home while on probation."  The BIA rejected this argument:

> [Section 1226(c)(1)] expressly states that an alien is subject to mandatory detention and shall be taken into custody when the alien is released, without regard to whether he was released "on parole, supervised release, or probation." Moreover, we have held that an alien who is released from criminal custody (*including from an arrest preceding a conviction, as the respondent implicitly conceded took place here*) . . . is subject to mandatory detention pursuant to [§1226(c)], even if the alien is not immediately taken into custody by immigration officials when released from incarceration.

24 I&N Dec. at 125 (emphasis added).  Here, Petitioner was arrested and released on bond during the pendency of his criminal proceedings in federal court.  In other words, he was released "from an arrest preceding a conviction," which, under *Matter of Kotliar*, is sufficient to constitute custody for the purposes of § 1226(c).

Petitioner argues that the BIA should have relied on its decision in *Matter of West*, 22 I&N Dec. 1405 (BIA 2000), to determine that he was not subject to mandatory detention.  Petitioner contends that, in *Matter of West*, the BIA specifically excluded probation, supervised release and parole from its definition of custody for the purposes of § 1226(c).  (Doc. No. 20 at 2.)  According to Petitioner, because he was sentenced to probation, he was never in custody, and, having never been in custody, he could not

_____

was in criminal custody, but, rather, that the BIA misapplied its own case law to determine the issue.

-22-

have been released and, thus, is not subject to mandatory detention under § 1226(c).

This argument is a misreading of the decision in *West.*  In that case, the issue was whether the petitioner had been "released" from custody before or after the expiration of the Transition Period Custody Rules ("TPCRs"), which were in place during the implementation of the amendments to the IIRIRA.  If the petitioner's release from custody occurred before the expiration of the TPCRs, he was not subject to the mandatory detention provision of § 1226(c).  If he was released after the expiration of the TPCRs, the mandatory detention provision applied.  The petitioner had been arrested and granted bond by a state court prior to the date on which the TPCRs expired.  He was sentenced to probation by the state court after the date of their expiration.  The parties disagreed regarding which event constituted Petitioner's release from custody.  The BIA concluded that the petitioner had been "released from custody" when he was released on bond after his arrest, and, thus, he was not subject to mandatory detention.  In other words, under *Matter of West,* a criminal alien who is arrested, given bond, and then later sentenced to probation is released from custody, for the purposes of applying § 1226(c), when he is released on bond by the court.  The decision in *Matter of West* does not support Petitioner's argument that he was never in custody.  Accordingly, the BIA did not err when it determined that Petitioner had been in custody for the purposes of applying § 1226(c).  This argument provides no basis to grant habeas relief in this case.

**C.      Alternatively, if § 1226(c)(1) Contains an Immediacy Requirement, Whether the Failure of Immigration Officials to Apprehend Petitioner Immediately Upon His Release Precludes Mandatory Detention**

Finally, Respondents argue that, even if § 1226(c) does contain an immediacy

requirement, the failure by immigration officials to act within the requisite time does not deprive them of the authority to impose mandatory detention.  In support of their argument, Respondents rely heavily on the decision of the Fourth Circuit in *Hosh*, and the decision of the Third Circuit in *Sylvain v. Atty General*, 714 F.3d 150 (3d Cir. 2013). In each of these cases, the relevant appellate court relied on the canon of statutory construction "that 'a statute directing official action needs more than a mandatory 'shall' before the grant of power can sensibly be ready to expire when the job is supposed to be done.  In other words, 'a provision that the Government 'shall' act within a specified time, without more, [is not] a jurisdictional limit precluding action later." *Sylvain*, 714 F.3d at 158 (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 158, 161-63 (2003));[13] *see also* *Hosh*, 680 F3d. at 381-82 (applying *Barnhart* to conclude that immigration officials do not lose the authority to impose mandatory detention if they fail to take a criminal alien into custody within a specified period of time).

Petitioner does not respond to this argument.  Respondents do not cite to any Sixth Circuit case law that agrees with the reasoning of *Hosh* and *Sylvain*, or that otherwise applies the reasoning of *Barnhart*.  Research has not revealed any such Sixth Circuit case law.  Given Petitioner's lack of response to this argument, the detailed discussion of the issue in Respondent's brief and the decisions in *Hosh* and *Sylvain*, Respondents' argument on this point also provides a sufficient basis to deny habeas relief in this case.

---

[13] In *Sylvain*, the Third Circuit declined to even consider whether § 1226(c) was ambiguous, as the court determined that, "even if the statute calls for detention 'when the alien is released,' and even if 'when' implies some period of less than four years, nothing in the statute suggests that officials lose authority if they delay." 714 F.3d at 161.

## VII.   Conclusion

For the reasons given above, the § 2241 petition should be DISMISSED.


Date: March 17, 2015                              /s/ *Nancy A. Vecchiarelli*
                                                        United States Magistrate Judge

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**